GOLDBERG et al. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. April 19, 1894.)

CUSTOMS DUTIES—CLASSIFICATION—"JET TRIMMINGS."

    Hat trimmings and ornaments composed of black glass and wire, the glass being the component of chief value, and made in imitation of jet, are dutiable, under the act of October 1, 1890, at 60 per cent., as "manufactures of glass" (paragraph 108); and the fact that they are commercially known as "jet trimmings" and "jet goods" does not authorize their classification as "manufactures of jet" (paragraph 459). 56 Fed. 818, affirmed.

Appeal by Goldberg & Co. from the decision of the circuit court for the southern district of New York, which affirmed the decision of the board of general appraisers as to the classification of sundry importations of hat trimmings and ornaments.

Edwin B. Smith, for appellants.

James T. Van Rensselaer, Asst. U. S. Dist. Atty.

Before WALLACE and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge.   In the years 1891 and 1892 the appellants imported into the port of New York sundry invoices of articles styled "manufactures of jet," which were hat trimmings and ornaments composed of black glass and wire; the glass being the component material of chief value, and made in imitation of jet. Jet is a well-known article, and is defined to be "a variety of lignite, of a very compact texture, and velvet-black color, susceptible of a good polish, and often wrought into toys, buttons, mourning jewels, and the like." Webst. Dict. 1884. The most important jet veins are said, by the authorities upon the subject, to be near Whitby, in Yorkshire, England. The collector classified the merchandise as manufactures of glass, and dutiable at 60 per cent. ad valorem, under paragraph 108 of the tariff act of October 1, 1890. The part of the paragraph which is important in this case is as follows:

"All other manufactures of glass, or of which glass shall be the component material of chief value, not specially provided for in this act, sixty per centum, ad valorem."

The importers protested against this classification, upon the ground that the goods were dutiable under the provisions of paragraph 459 of the same act, which is as follows:

"Manufactures of alabaster, * * * . jet, * * * or of which these substances, or either of them, is the component material of chief value, not specially provided for in this act, twenty-five per centum ad valorem."

The question of fact in controversy before the board related to the commercial designation of the articles. The witnesses upon the opposite sides of this controversy, respectively, testified that they were commercially known as "jet goods, jet ornaments, and jet trimmings," or that they were known in trade as "imitation jet goods." The board, without considering the preponderance of evidence, found that "the merchandise is commercially known as 'jet and imitation jet articles,'" and further found that they were manufactures of glass, and were not manufactures of jet, and affirmed the action of the collector. The circuit court sustained the decision of the board. The appellants insist that the testimony clearly shows that the articles in question were universally known in trade and commerce at and prior to October 1, 1890, the date when the act imposing the duty was passed, as "jet goods," or "jet trimmings," and we are of opinion that they were thus generally so styled in the language of commerce. We are also of opinion, however, that this fact does not control the proper classification of these articles, in view of the other provisions respecting jet and its manufactures in the existing tariff act and its predecessors. Unmanufactured jet is upon the free list of the tariff act of October 1, 1890 (paragraph 620), and has been free of duty since the tariff act of July 14, 1870. The jet of the free list is obviously a real jet, and not the black glass from which the dress or hat trimmings in question are made. The existing act makes dutiable manufactures of jet, and in so doing has changed the phraseology of the pre-existing tariff act of March 3, 1883, which imposed a duty upon "jet, manufactures and imitations of." The same provision was contained in the Revised Stat-

utes, and first appeared in the tariff act of July 30, 1846. Thus, in the act of October 1, 1890, the provision which had long previously existed in regard to manufactures of imitations of jet was dropped, and manufactures of jet were left specifically provided for. This history enforces the correctness of Judge Lacombe's conclusion in the circuit court that "the unmanufactured jet of paragraph 620 in the tariff act of 1890 is the material out of which the manufactures of jet provided for in paragraph 459 of the same act are made." Congress had known since 1846 that there were manufactures of imitations of jet, and had made them dutiable by name. In 1890 it omitted to specify this class of manufactures. It retained a duty upon manufactures of jet, and in so doing it used the word "jet" with the meaning that it had had in the tariff acts for a series of years. Inasmuch as unmanufactured jet and manufactures of that substance are specially provided for, it creates a severe strain upon the principle of commercial designation to infer that beads and trimmings called "jet millinery," but made of glass, which is not commercially jet, should be classified as manufactures of jet. It is true that there was scattering testimony that the black glass, before it was manufactured into ornaments, was called "jet," but it was insufficient to establish such commercial name. As the conclusion is succinctly stated in the appellee's brief, "If an article is a manufacture of glass, it cannot be changed into a manufacture of jet simply because the trade has come to call certain black glass trimmings and ornaments by the name of 'jet.'" The principle of commercial designation does not justify such a result. The decision of the circuit court is affirmed.